**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| Jackson Taddeo-Waite<br><br>Plaintiff,<br><br>v.<br><br>X. Corp.<br>X.AI Corp.<br><br>Defendants. | : | Civil Action No. 3:25-cv-00874 (VDO)<br><br><br><br><br><br><br><br>AUGUST 4, 2025 |

**DEFENDANTS' MOTION TO TRANSFER VENUE**

Defendants X Corp. and X.AI Corp. (collectively, the "X Entities") respectfully move to transfer this action to the Northern District of Texas.

## I. INTRODUCTION

This action should be transferred to the United States District Court for the Northern District of Texas under X Corp.'s Terms of Service and Purchaser Terms of Service (together, the "Relevant Terms"). Plaintiff agreed to the Relevant Terms when he created and used his account and Premium+ subscription on X Corp.'s social media platform, X.[1] The Relevant Terms each contain a valid, enforceable forum selection clause that required him to bring his claims against the X Entities in the Northern District of Texas—not in Connecticut. Accordingly, this Court should transfer this action to the Northern District of Texas.

[1] "X" is the social media platform formerly known as "Twitter."

## II. BACKGROUND

### A. Plaintiff's Allegations.

Plaintiff alleges X Corp. is "incorporated in Nevada and maintains its principal place of business in Bastrop, Texas," and that X.AI Corp. is "incorporated in Nevada and headquartered in California." ECF No. 1 at ¶¶ 29–30. Plaintiff further alleges that X.AI Corp. "acquired X Corp. through an all-stock transaction." *Id.* ¶ 45. Plaintiff alleges he was a "verified user" and "Premium+ subscriber" of X. *Id.* at ¶ 48. Plaintiff asserts that an allegedly "defamatory post" concerning his 10-year-old daughter appeared on X on April 8, 2025, and that X subsequently refused Plaintiff's requests to remove the post. *Id.* ¶¶ 48–49. Plaintiff also alleges that after he made posts on X to "expose and comment on coordinated inauthentic behavior on the service . . ." Plaintiff experienced "a sharp and measurable drop in visibility, reply impressions, and engagement." *Id.* ¶¶ 65–68.

Based on these allegations, Plaintiff asserts seven claims against the X Entities, styled as: (1) "Violation of the First Amendment: Retaliatory Suppression of Protected Speech"; (2)"Violation of the First Amendment: Algorithmic Editorialization"; (3) "Violation of Substantive and Procedural Due Process"; (4) "Negligent Enforcement of Safety Policies and Gross Editorial Misconduct"; (5) "Intentional Infliction of Emotional Distress"; (6) "Declaratory Relief: Algorithmic Systems Constitute Editorial Activity"; and (7) "Declaratory Relief: Section 230 Creates State Actor Entwinement." Plaintiff demands injunctive relief (including "removal of the post" concerning his daughter and "all copies, derivatives or cached versions of the post"), compensatory damages, and punitive damages. *Id.* at ¶¶ 154–160.

### B. The Relevant Terms.

In creating and using his account, Plaintiff necessarily agreed to X Corp.'s Terms of Service.[2] Request for Judicial Notice ("RJN") at Ex. 1 at 2 ("These Terms of Service ('Terms') govern your and other users' access to and use of the services . . . . By using the Services you agree to be bound by these Terms."). The Terms of Service contain a forum selection clause that states: "All disputes related to these Terms or the Services, including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services, will be brought solely in the U.S. District Court for the Northern District of Texas or state courts located in Tarrant County, Texas, United States, and you consent to personal jurisdiction and waive any objection as to inconvenient forum." *Id.*, Ex. 1 at 5. The Terms of Service define the term "Services" to include, among other things, X Corp.'s "various websites," such as the X platform. *Id.*, Ex. 1 at 2. The Terms also contain a choice of law clause providing that "[t]he laws of the State of Texas, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and [X Corp.]" *Id.*, Ex. 1 at 5.

Similarly, Plaintiff's use and creation of his X Premium+ subscription constituted his agreement to X's Purchaser Terms of Service. *Id.*, Ex. 2 at 1 ("To the extent that you sign up for and/or use a Paid Service, your use of the Paid Services and any corresponding transactions are subject to . . . the terms and conditions set forth herein."). The Purchaser Terms of Service also

---

[2] Plaintiff implicitly acknowledges his assent to the Terms, where he alleges he was a "user" and later "closed his account and formally revoked consent to the Terms of Service in writing" on April 9, 2025. ECF No. 1 at ¶ 50. He alleges this purported revocation occurred "after" the events he alleges are the basis for his claims—namely, the April 8, 2025 post regarding his daughter, his "reports" to X Corp. and X Corp.'s responses, and his own use of his Premium+ X subscription. ECF No. 1 ¶¶ 48-50, 53, 67-68.

include a Texas choice-of-law clause and a forum-selection clause designating the Northern District of Texas as an appropriate venue. *Id.*, Ex. 2 at 4 ("The laws of the State of Texas . . . will govern these Terms and any dispute that arises between you and us . . . . All disputes related to these Terms, including any disputes, claims, or controversies arising out of or relating to these Terms, will be brought exclusively in the federal or state courts located in Tarrant County, Texas, United States [e.g., the Northern District of Texas].").

## III. <u>LEGAL STANDARD</u>

A forum selection clause "may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). Section 1404(a) provides, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." "[A] proper application of § 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 59-60 (internal quotation mark omitted). "[A] resisting party bears a heavy burden in overcoming a presumptively enforceable forum selection clause." *Id.* at 219 (quotations omitted).

## IV. <u>ARGUMENT</u>

### A. This Court Should Transfer This Action to the Northern District of Texas Under the Relevant Terms' Forum Selection Clauses.

Plaintiff's claims should be transferred to the Northern District of Texas pursuant to the Relevant Terms' forum selection clauses because the forum selection clauses are presumptively enforceable, and no public interest factors weigh against a transfer under these circumstances.

#### *1. The Relevant Terms' Forum Selection Clauses Are Presumptively Enforceable.*

In the Second Circuit, a forum-selection clause is presumptively enforceable when it was

"reasonably communicated to the resisting party, is mandatory, and encompasses the claims and parties at issue." *Martinez v. Bloomberg LP*, 740 F.3d 211, 227 (2d Cir. 2014).

a. The Forum Selection Clauses Were Reasonably Communicated.

The Relevant Terms' forum selection clauses were reasonably communicated to Plaintiff because X's Terms of Service are hyperlinked on the X homepage in bright blue directly between buttons for users to "Create account" or "Sign in," with a reminder that "[b]y singing up, you agree to the Terms of Service." RJN, Ex. 3 at 1. Courts in the Second Circuit regularly hold that a website's "Terms of Service" or "Terms of Use" are "reasonably communicated" to the website's users when they are presented in this manner. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 71, 77-80 (2d Cir. 2017 ("reasonable notice" of terms of service was provided, even though plaintiff denied "actual notice," where, "[b]elow the input fields and buttons on the Payment Screen is black text advising users that '[b]y creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY.' . . . The capitalized phrase, which is bright blue and underlined, was a hyperlink that, when clicked, took the user to a third screen containing a button that, in turn, when clicked, would then display the current version of both Uber's Terms of Service and Privacy Policy."); *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 454 (E.D.N.Y. 2013) (dating website's terms of service were reasonably communicated to its users where "the sign-up page contain[ed] a hyperlink to the website's Terms of Service"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 838 (S.D.N.Y. 2012) (Facebook terms of service were reasonably communicated to its users where "the user agrees to the Terms of Use not listed on the site itself but available only by clicking a hyperlink" at the sign-up page).

Additionally, Plaintiff's Complaint implicitly acknowledges he assented to the Terms of Service. *See*, *e.g.*, ECF No. 1 at ¶¶ 50, 53 (alleging Plaintiff "revoked his consent to the Terms of

Service on April 9, 2025, *after*" the events that are the basis for his claims)[3] (emphasis added); *compare* ¶ 52 (alleging Plaintiff's daughter "has never registered for or accessed any service operated by Defendant X Corp.," and therefore "is not bound by any user agreement, . . . and is not subject to any Terms of Service"). And while Plaintiff purports to have "revoked" his consent to the Relevant Terms, the Relevant Terms provide that the forum-selection clause survives any termination of the agreement. Terms of Service at 4 ("You may end your legal agreement with us at any time . . . in [] such case[] the Terms shall terminate . . . except that the following sections shall continue to apply: . . . . 6 [including the forum-selection clause]"). He cannot now claim that the Relevant Terms, including their forum selection clauses, were not made "reasonably available" to him. *See Fteja*, 841 F. Supp. 2d at 837 (plaintiff's allegation that he complied with terms of service demonstrated his constructive knowledge of the same, and terms' forum selection clause would be presumed enforceable).

b. <u>The Forum Selection Clauses Are Mandatory.</u>

The Relevant Terms' forum selection clauses are mandatory, not permissive, because they provide that Plaintiff's claims "will be brought *exclusively*" in the U.S. District Court of the Northern District of Texas. RJN Ex. 1 at 5; Ex. 2 at 4 (emphasis added); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007)) ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language.").

---

[3] Plaintiff's purported revocation of consent is of no consequence to the analysis of the enforceability of the forum selection clause where, as he alleges, any revocation, even if effective, occurred after the events he alleges give rise to his claims.

c. <u>The Forum Selection Clauses Encompass the Claims and Parties at Issue.</u>

The scope of a forum-selection clause is determined by its precise language. In the Second Circuit, forum-selection clauses that encompass all claims "relating to" a subject are afforded the greatest breadth, whereas "arising from" denotes a more limited scope. *Coregis Ins. Co. v. Am. Health Found., Inc*., 241 F.3d 123, 128 (2d Cir. 2001) ("The term 'related to' is typically defined more broadly and is not necessarily tied to the concept of a causal connection."). Here, the Relevant Terms' forum-selection clauses apply to all claims "related to" the "Terms" and "Services," "including without limitation disputes related to or arising from other users' and third parties' use of the Services and any Content made available by other users and third parties on the Services." RJN Ex. 1 at 5; *see also* RJN Ex. 2 at 4. Thus, they should be read as broadly as possible to encompass all of Plaintiff's claims, which are all "related to" the Terms and the "Services," *i.e*., X, given that all of Plaintiff's claims relate to the Terms, his use of X, and his request for X to moderate the content of another user on X. *See* Claim I, ¶¶ 65, 72 (alleging "suppression" of Plaintiff's "political speech on X.com"); Claim II, ¶¶ 82, 90 (alleging X Corp.'s "editorial decisions" "suppressed Plaintiff's protected speech" on X ); Claim III, ¶ 92 (alleging "Defendant enforced their service policies [i.e., the Terms of Service] arbitrarily" by allowing certain content to "remain published while silencing the Plaintiff" on X); Claim IV, ¶¶ 107, 111 (alleging the negligent enforcement of "publicly stated policies" (i.e., the Terms of Service) by not undertaking certain "content moderation" on X); Claim V, ¶ 116 (alleging emotional distress arising from X Entities' alleged failure to remove a post on X and causing "Plaintiff to be functionally coerced into deleting his [X] account"); Claim VI, ¶¶ 121-133 (seeking declaratory relief that the X Entities' content moderation on X is unprotected by Section 230); and Claim VII, ¶¶ 134-148 (same). While the precise authority for Plaintiff's largely *sui*

*generis* claims is unclear, the claims nonetheless all fall under the Relevant Terms' broadly constructed forum-selection clauses, which do not limit themselves to only contract actions, but apply to all claims. *Cuhadar v. Savoya, LLC*, 766 F. Supp. 3d 434, 447 (E.D.N.Y. 2025) ("The [forum-selection] provision made no distinction as to the specific types of claims to which it may apply, but instead contains expansive, inclusive language"); *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982) (forum-selection clause encompassed statutory claims); *SLSJ, LLC v. Kleban*, No. 14-CV-390 (CSH), 2015 WL 1973307, at *15 (D. Conn. Apr. 30, 2015) (forum-selection clause encompassed tort claims).

The Relevant Terms' forum selection clauses also apply to all parties to this action. X Corp. and Plaintiff are both parties to the Relevant Terms and are thus subject to the forum-selection clauses. *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) (parties to a contract agree to be bound by its forum-selection clause). While X.AI Corp. is not technically a party to the Relevant Terms, a forum-selection clause also may be enforced by a non-contracting party, where, as here, it is "closely related" to a contracting party such that the non-contracting party's enforcement of the clause is "foreseeable." *Id*. at 723 (permitting enforcement of forum-selection clause by non-signatory).

Here, X.AI Corp. and X Corp. are "closely related" corporate entities. *See F5 Cap. v. RBS Sec. Inc.*, No. 3:14-CV-1469 (VLB), 2015 WL 5797019, at *6 (D. Conn. Sept. 30, 2015), I, 692 F. App'x 66 (2d Cir. 2017) (subsidiary of signatory party was entitled to enforce forum-selection clause). Plaintiff understood this in alleging his claims. *See, e.g.*, ECF No. 1 ¶ 45.[4] As such, Plaintiff is estopped from arguing otherwise. *See F5 Cap. v. RBS Sec. Inc.*, 2015 WL

[4] While Plaintiff's allegations are not accurate as to the relationship between X Corp. and X.AI Corp., he is correct in alleging they are related corporate entities.

5797019, at *4-5 ("a plaintiff may not intentionally avoid" a forum selection clause "by intentionally naming defendants who were not signatories to the agreement"). "To determine the applicability of" estoppel, "courts look to the allegations in the operative complaint, to assess the closeness of the parties' relationship." *Id.* at *5. Plaintiff's only allegation as to X.AI specifically is that "X.AI operated, engineered, and monetized the system that selected, ranked, and elevated the harmful post [regarding Plaintiff's daughter]." ECF No. 1 ¶ 63. This is an allegation he repeats against both "Defendants." *See id.* at 1 ¶ 74 ("Defendants operated algorithmic and editorial infrastructure that ranked, distributed, and monetized material written by [users] . . . ."); *see also* ECF No. 1 ¶¶ 83, 121, 122, 129, 144. In other words, neither Plaintiff's factual allegations nor any of his causes of action—all alleged against "X Corp." or "Defendants" (ECF No. 1, ¶¶ 65-148)—are made as to X.AI only. Having essentially treated X.AI Corp. and X Corp. as one and the same for purposes of asserting claims related to X Corp., Plaintiff cannot deny that the entities are "closely related." *See F5 Cap. v. RBS Sec. Inc*., 2015 WL 5797019, at *5 (quoting *Vertucci v. Orvis*, No. 3:05-CV-1307 (PCD), 2006 WL 1688078, at *6 (D. Conn. May 30, 2006) (noting complaint "completely intertwines his claims against all of the defendants" and thus the plaintiff could not "now claim that the defendants have an insufficient relationship with [the signatory] or with one another").

X.AI Corp.'s enforcement of the forum selection clause also was foreseeable, where the forum selection clause is not limited to disputes between Plaintiff and X Corp., but "[a]ll disputes related to the Terms or the Service." RJN, Ex. 1 at 4–5. Furthermore, certain provisions in the Terms expressly apply to "X Entities," including X Corp.'s "related companies," including provisions addressing the harm alleged in this suit—*i.e.*, "harm that results from your access to or use of the Services or any Content." *Id.*, Ex. 1 at 4. Under such circumstances, enforcement of

the forum selection clause by X.AI Corp. was foreseeable. *See F5 Cap. v. RBS Sec. Inc*., 2015 WL 5797019, at *6 (where, based on the language of the agreement, plaintiff "was aware" that its terms implicated "others" in the issues alleged as the basis for the suit, the non-signatory's enforcement of the forum selection clause was foreseeable). X.AI Corp. accordingly also may enforce the forum-selection clause to Plaintiff's claims.

In sum, the forum selection clauses encompass all the present claims and parties. And because the forum selection clauses were also "reasonably communicated" and are mandatory in nature, they are presumptively enforceable.

*2. No Public Interest Factors Outweigh Transfer to the Selected Forum.*

Where a forum-selection clause binds the parties to an action, a motion to transfer should address "public-interest factors only," and "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64; *see also Atkinson v. Facebook, Inc.*, No. 3:19-CV-1785 (JCH), 2020 WL 6151527, at *3 (D. Conn. July 27, 2020) (parties' private interests are irrelevant to motion to transfer pursuant to forum-selection clause).

A presumptively enforceable forum selection clause may be invalidated only where "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 392 (2d Cir. 2007). None of these circumstances are present here.

*First*, Plaintiff's agreement to the Terms' forum selection clause was not "induced by fraud or over-reaching." *Fisher v. eBay, Inc*, No. 3:17-CV-8 (DJS), 2017 WL 9565759, at *2 (D. Conn. July 26, 2017) (granting motion to transfer pursuant to forum-selection clause in eBay's

User Agreement where "there [was] nothing before the Court to suggest the forum-selection clause . . . is fraudulent or unjust"). Plaintiff voluntarily agreed to the forum selection clause when he created and continued to use his X account and Premium+ subscription

*Second*, the application of Texas law would not be fundamentally unfair because, under the Relevant Terms' choice-of-law provisions, Plaintiff agreed that Texas law applied to his claims. *Clisham Mgmt., Inc. v. Am. Steel Bldg. Co*., 792 F. Supp. 150, 157 (D. Conn. 1992) (granting transfer to Texas pursuant to forum-selection clause where Texas law governed); *see also Giordano v. UBS, AG*, 134 F. Supp. 3d 697, 704-05 (S.D.N.Y. 2015) (granting motion to transfer to Switzerland where parties' contract provided for Swiss governing law and a Swiss venue, as "it would be more burdensome to litigate [in New York] rather than in Switzerland, because this Court would be required to consider expert evidence on foreign law relating to virtually all of the issues in the case").

*Third*, "[e]nforcement of the forum selection clause will not offend the public policy of Connecticut." *Colby v. Norwegian Cruise Lines, Inc.*, 921 F. Supp. 86, 88 (D. Conn. 1996) (enforcing forum-selection clause in transferring action from Connecticut to Florida).

*Fourth*, litigating in the Northern District of Texas will not be so inconvenient or unfair such that Plaintiff would be deprived his day in court. The additional time and cost required to litigate in a more distant forum is not a sufficient inconvenience to deny enforcing a forum-selection clause. *United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 227 (D. Conn. 2003) (a "forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel" and "the costs and difficulties of suing in a foreign country do not satisfy the *Bremen* inconvenience standard") (cleaned up); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 19 (1972) (party was not deprived of its day in

court by having to incur the expense of litigating in London rather than New York); *Cuhadar v. Savoya, LLC*, 766 F. Supp. 3d 434, 450 (E.D.N.Y. 2025) (granting motion to transfer pursuant to forum-selection clause where there was no evidence to suggest it would deprive plaintiff of their day in court).

In sum, the Relevant Terms' forum selection clauses are not only presumptively enforceable but are not subject to any public interest exceptions. Accordingly, this action should be transferred to the Northern District of Texas. *Atkinson v. Facebook, Inc.*, 2020 WL 6151527, at *3 (enforcing forum-selection clause in social media site's terms of use); *Fisher v. eBay, Inc.*, 2017 WL 9565759, at *2 (enforcing forum-selection clause in website's user agreement); *see also Trump v. Twitter, Inc.*, 2021 WL 8202673, at *5 (S.D. Fla. Oct. 26, 2021) (collecting cases where Twitter's Terms of Service's forum selection clause was enforced).

## V. CONCLUSION

For all these reasons, this case should be transferred to the United States District Court for the Northern District of Texas under the Relevant Terms' forum selection clause.

DEFENDANTS,
X. Corp.
X.AI Corp.

By: */s/ Lauren R. Greenspoon*
Lauren R. Greenspoon (ct04846)
James D. Geisler (ct31447)
SHOOK, HARDY & BACON L.L.P.
185 Asylum Street
City Place 1, Suite 3701
Hartford, CT 06103
Tel. No.: (860) 515-8901
Fax No.: (860) 515-8911
LGreenspoon@shb.com
JGeisler@shb.com

and

Kenneth M. Trujillo-Jamison
(*pro hac vice forthcoming*)
Willenken LLP
707 Wilshire Blvd., Suite 4100
Los Angeles, CA 90017
Tel. No.: (213) 955-8031
Fax No.: (213) 955-9250
ktrujillo-jamison@willenken.com

*Their Attorneys*

**CERTIFICATE OF SERVICE**

I hereby certify that on **AUGUST 4, 2025**, a copy of the foregoing **DEFENDANTS' MOTION TO TRANSFER VENUE** was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Lauren R. Greenspoon*
Lauren R. Greenspoon